UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISHA C. THOMAS, *et al.* | CIVIL ACTION |
| VERSUS | NO. 24-2472 |
| AMERICAN AUTOMOBILE INSURANCE COMPANY., *et al.* | SECTION M (4) |

**ORDER & REASONS**

Before the Court is a motion for summary judgment filed by defendant Huntington Ingalls Incorporated ("Avondale").[1] Plaintiffs Lisha C. Thomas ("Lisha"), Samantha Thomas ("Samantha"), and Shaundreika Shorty ("Shorty") (collectively, "Plaintiffs") respond in opposition,[2] and Avondale replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion because Plaintiffs have pointed to no competent evidence placing the decedent, Sam Carter Thomas ("Thomas"), in close proximity to asbestos fibers that were disturbed as a result of work performed at Avondale's shipyard. In other words, there is no competent summary-judgment evidence that Thomas worked with asbestos-containing materials at Avondale or that he was in the presence of other tradesmen who were working with asbestos-containing materials.

## I. BACKGROUND

This is a personal injury case concerning alleged exposure to asbestos. Thomas was diagnosed with mesothelioma on October 7, 2020, and passed away on January 14, 2021.[4] In January 2022, Thomas's surviving spouse and daughters filed this suit in state court against various

[1] R. Doc. 118.
[2] R. Doc. 132.
[3] R. Doc. 139.
[4] R. Doc. 1-1 at 4-5.

defendants, alleging that Thomas was exposed to asbestos from his father's clothing from 1950 until 1971 and occupationally exposed from 1968 through 1980.[5] Plaintiffs amended their complaint in April 2024 to add Avondale as a defendant, among others.[6] Thomas worked at Avondale as a general helper from December 1970 to March 1971.[7] Plaintiffs allege that, during that time, Thomas used, handled, or was in the vicinity of others using or handling asbestos or asbestos-containing products.[8] Plaintiffs allege that the defendants failed to protect Thomas from, and to warn him about, the dangers of asbestos.[9] Plaintiffs' claims against Avondale sound in negligence.[10] In July 2024, Avondale filed an answer, crossclaims, and third-party demand.[11] Avondale subsequently removed the suit to this Court.[12]

Thomas died before suit was filed and, so, did not give a deposition.[13] Lisha (Thomas's wife), Samantha (one of Thomas's two daughters), and Bernadine Thomas (Thomas's ex-wife) were all deposed, but none testified as to any facts regarding Thomas's alleged asbestos exposure at Avondale.[14] At Samantha's request, Harry Johnson, whose employment at Avondale overlapped with that of Thomas, executed an affidavit and sat for a deposition.[15]

In his October 24, 2024 affidavit, which is represented to be from Johnson's personal knowledge, he swore:

3. I worked with Sam Carter Thomas at Avondale Shipyard in 1970 and 1971.

4. I was a tacker and Sam Carter Thomas worked as a helper.

---

[5] *Id.* at 2-4.
[6] R. Doc. 1-2 at 1-2.
[7] R. Doc. 118-1 at 2.
[8] *See generally* R. Docs. 1-1; 1-2
[9] *Id.*
[10] *Id.*
[11] R. Doc. 13-1 at 277-96.
[12] R. Doc. 1.
[13] R. Doc. 118-1 at 2.
[14] *Id.* at 2-3. Shorty (Thomas's other daughter) was unable to be deposed due to mental capacity issues. *Id.* at 3.
[15] R. Docs. 118-7 (deposition); 132-3 (affidavit).

> 5. Sam Carter Thomas and I worked at Avondale's main yard and in particular Wet Dock III.
>
> 6. I remember asbestos being all over the vessels under construction at Avondale. Sam Carter Thomas and I would work in all parts of the vessel including the engine rooms. We worked around other crafts, including insulators, who were installing asbestos insulation.
>
> 7. The work performed with insulation by the insulators and other craftsmen created dust that Sam Carter Thomas and I encountered.
>
> 8. While on the vessels, I remember Hopeman Brothers working around Sam Carter Thomas and me. Hopeman Brothers was a joiner contractor and they installed wall boards in the crew quarters and other parts of the vessels.
>
> 9. Hopeman Brothers' work created dust from the sawing of the wallboards. The dust created by Hopeman Brothers was encountered by Sam Thomas and me.
>
> 10. No one from Avondale or Hopeman Brothers ever warned us about the dangers of asbestos.[16]

Johnson was deposed on July 16, 2025.[17] He did not unequivocally affirm his affidavit.[18] The discrepancies call into question whether the affidavit was really from Johnson's personal knowledge.[19] When asked if he provided all of the information in the affidavit, Johnson replied that "[t]he lawyer told me some of the information."[20] Johnson did not read the affidavit but was simply told by the lawyer what was in the document.[21] Johnson was unable to confirm certain of the statements in his affidavit. He did not confirm that he worked with Thomas in any particular locations at Avondale, much less at Wet Dock 3.[22] When asked whether he worked with Thomas in certain parts of the shipyard, Johnson testified multiple times "I don't recall," and added "I seen

---

[16] R. Doc. 132-3 at 1.

[17] R. Doc. 118-7 at 1.

[18] *See generally id.*

[19] *Id.* at 32.

[20] *Id.*

[21] *Id.* at 30-31. In fact, Johnson indicated that he did not think he "*could* read everything in [the] document." *Id.* at 33 (emphasis added).

[22] *Id.* 21-28, 37-38, 42.

Sam at work, but I don't recall where at."[23] Johnson also could not recall where Thomas worked in the shipyard.[24] When asked whether he had "any specific recollection of seeing Mr. Thomas on a boat," he responded, "I don't recall."[25] Although Johnson responded affirmatively when asked if statement number five in the affidavit was true, his further testimony did not confirm that he and Thomas worked *together* on Wet Dock 3 because he testified that he "might have passed by [Thomas]" near Wet Dock 3 and that he had "seen [Thomas] at Avondale Shipyard."[26] Further, Johnson responded "I can't recall" when asked if it was true that he and Thomas worked in all parts of the vessels around other crafts, including insulators handling asbestos products.[27] And Johnson was nonresponsive when asked about statement number seven in the affidavit which recited that he and Thomas encountered dust created by the insulators and other craftsmen.[28] Instead of answering the question asked, Johnson replied: "They had asbestos all over out there. Them people had it loading it on trucks, I think."[29] Finally, with respect to his affidavit statements regarding Thomas working around Hopeman Brothers contractors handling asbestos-containing wallboards, Johnson testified that "Hopeman Brothers was loading on the crane and things, putting that on the boat."[30]

## II. PENDING MOTION

Avondale argues that there is no competent summary-judgment evidence that Thomas was exposed to asbestos during his employment at Avondale, much less that such alleged exposure was so significant that it substantially contributed to his mesothelioma.[31] Avondale points out that

[23] *Id.* at 21-24, 42 (second quote at 22).
[24] *Id.* at 23.
[25] *Id.* at 26.
[26] *Id.* at 37-38.
[27] *Id.* at 38.
[28] *Id.* at 38-39.
[29] *Id.* at 39.
[30] *Id.* at 39-40.
[31] R. Doc. 118-1 at 1.

Johnson is the only witness purporting to offer evidence of Thomas's employment at Avondale and his deposition testimony reveals that he never worked with Thomas at Avondale or saw Thomas performing work at Avondale and, thus, offers no specific instance in which Thomas was exposed to asbestos while working at Avondale.[32] Avondale contends that, because the mere presence of asbestos at a worksite is not sufficient to find liability, to prevail Plaintiffs must show that Thomas worked with asbestos-containing products or in specific locations where asbestos-containing products were used, which they cannot.[33] To that end, Avondale asserts that there is no testimony regarding: Thomas's work duties or working conditions as "a sheet metal man" at Avondale; the specific area of the shipyard where he worked; any vessels he worked on at Avondale; or any specific asbestos-containing products he used or that were used in close proximity to him at Avondale.[34] Avondale sums up its view that "[a]t best, the Plaintiffs offered testimony that Mr. Thomas worked at Avondale and Harry Johnson offered testimony that Mr. Thomas was a sheet metal man who he may have seen at Avondale on the levee eating lunch or walking toward Wet Dock 3."[35] Moreover, says Avondale, Plaintiffs cannot prevail based solely on expert testimony because they lack evidence that Thomas was specifically exposed to asbestos at Avondale.[36]

In opposition, Plaintiffs argue that Johnson's affidavit and testimony create disputed issues of material fact that preclude summary judgment.[37] While Plaintiffs acknowledge that "Johnson did not confirm every sentence of the affidavit verbatim," his answers, in their view, "affirmed its core material facts – that he worked with Mr. Thomas at a specific place, Wet Dock No. 3 in

---

[32] *Id.* at 2-5.
[33] *Id.* at 6-14.
[34] *Id.* at 12.
[35] *Id.*
[36] *Id.* at 13.
[37] R. Doc. 132 at 2-5.

Avondale's Main Yard, during the identical December 1970 to March 1971 window reflected in Avondale's own personnel record, adding that the work occurred while an Avondale contractor was actively performing insulation work at the shipyard."[38] Plaintiffs urge that Johnson should be called to testify at trial to allow the jury to weigh his credibility.[39] Plaintiffs also point to testimony given in 1983 by Burnett L. Bordelon, an Avondale corporate representative who was the superintendent of the insulation department, that his department typically installed 15 to 20 miles, or more, of insulation in a single ship's engine room.[40] Plaintiffs contend that Bordelon's testimony, combined with Johnson's that asbestos was "all over" the shipyard and that Hopeman Brothers contractors were installing wallboard at the relevant time, is sufficient to show that Thomas was in proximity to asbestos while he worked at Avondale.[41] Next, Plaintiffs argue that Dr. Brent C. Staggs, their expert pathologist, opined that Thomas had significant bystander exposure to asbestos that substantially contributed to his developing mesothelioma.[42] Plaintiffs rely further on the testimony of Kenneth Garza, their industrial hygienist, who also testified that Thomas experienced bystander exposure.[43] Plaintiffs argue that the cases upon which Avondale relies – *Vodanovich v. A.P Green Industries, Inc.*, 869 So. 2d 930 (La. App. 2004); *Palermo v. Port of New Orleans*, 933 So. 2d 168 (La. App. 2006), *on reh'g*, 951 So. 2d 425 (La. App. 2007); and *Lucas v. Hopeman Brothers, Inc.*, 60 So. 3d 690 (La. App. 2011) – are distinguishable because here Johnson provided eyewitness testimony that he worked alongside Thomas at Wet Dock 3 while a contractor was performing asbestos insulation work.[44] Similarly, Plaintiffs claim that this

---

[38] *Id.* at 4. Plaintiffs recite the same idea – that Johnson testified he worked alongside Thomas at a specific location in the shipyard while asbestos-containing products were being used – twice more. *Id.* at 11, 18.

[39] *Id.* at 5.

[40] *Id.* at 5-6.

[41] *Id.* at 6, 10.

[42] *Id.* at 6-7.

[43] *Id.* at 7-8.

[44] *Id.* at 11.

case has a stronger record of exposure than did *Marcella v. Huntington Ingalls Inc.*, 2025 WL 3611530 (E.D. La. Dec. 12, 2025), in which this Court, according to Plaintiffs, denied the third-party defendants' motions for summary judgment based on circumstantial evidence and expert testimony.[45] Finally, Plaintiffs contend that the brevity of Thomas's work at Avondale is irrelevant, there is no safe level of exposure to asbestos, and even low levels of asbestos exposure can cause mesothelioma.[46]

In reply, Avondale argues that Johnson's affidavit – the only avenue for Plaintiffs to defeat its motion – is not competent summary-judgment evidence because it is not made from Johnson's personal knowledge and was contradicted by his deposition testimony.[47] Avondale points to Johnson's testimony regarding the drafting and execution of the affidavit.[48] In October 2024, Johnson twice met with an attorney representing Plaintiffs at a truck stop, first to discuss a document (presumably a draft of the affidavit) and then for Johnson to sign it.[49] Johnson, who completed the seventh grade and describes his reading comprehension as "[n]ot that good," did not read the document and believed that he would not be able to read everything in it.[50] The attorney read it to him.[51] And, when asked if he supplied the information in the document, Johnson replied that the attorney told him some of it.[52] With this backdrop, Avondale argues that the affidavit is "suspect" and then identifies all the places where Johnson's deposition testimony repudiated the affidavit or failed to confirm its contents.[53] Avondale asserts that Johnson's

---

[45] *Id.* at 13.

[46] *Id.* at 12-18.

[47] R. Doc. 139 at 1-7. As to the competence and admissibility of Johnson's affidavit, Avondale adopts the arguments made by its co-defendants and third-party defendants in their motions for summary judgment. *Id.* at 1 (citing R. Docs. 119; 120; 121).

[48] *Id.* at 2 (citing R. Doc. 118-7 at 29-33).

[49] *Id.* (citing R. Doc. 118-7 at 29-30).

[50] *Id.* (citing R. Doc. 118-7 at 30, 32-33).

[51] *Id.* (citing R. Doc. 118-7 at 30).

[52] *Id.* (citing R. Doc. 118-7 at 32).

[53] *Id.* at 2-7.

affidavit cannot be used to create a genuine issue of material fact because Plaintiffs offer no reasonable explanation for the discrepancies.[54] Avondale further argues that the testimony of Bordelon, Staggs, and Garza cited by Plaintiffs is irrelevant because there is no evidence regarding Thomas's working conditions or his exposure to asbestos at Avondale.[55] Finally, Avondale contends that this case is indistinguishable from *Vodanovich*, *Palermo*, and *Lucas* because here, without Johnson's affidavit, "no witness places Mr. Thomas working alongside anyone in a specific location at Avondale where asbestos work was occurring."[56] And this case, in Avondale's view, is reconcilable with *Marcella* because "there was no issue in *Marcella* regarding completely unreliable, incompetent exposure evidence as there is here."[57]

## II. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the

---

[54] *Id.* at 4.
[55] *Id.* at 7-9.
[56] *Id.* at 9.
[57] *Id. at* 10. Avondale correctly characterizes Plaintiffs' arguments about the length of Thomas's employment and safe levels of exposure as "red herrings" as Avondale did not raise such arguments in its motion. *Id.*

conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*.7, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v.*

*Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Liability for Asbestos Exposure**

To prevail in an asbestos case under Louisiana law, a plaintiff must prove by a preponderance of the evidence that he had a significant exposure to asbestos from the defendant's products or activities and the exposure was a substantial factor in causing his injury. *Rando v. Anco Insulations Inc.*, 16 So. 3d 1065, 1088 (La. 2009). When there are multiple causes of injury, "a defendant's conduct is a cause in fact if it is a substantial factor generating plaintiff's harm." *Adams v. Owens-Corning Fiberglas Corp.*, 923 So. 2d 118, 122 (La. App. 2005) (citing *Vodanovich*, 869 So. 2d at 932). The evidence may be direct or circumstantial. *Williams v. Boeing Co.*, 23 F.4th 507, 512 (5th Cir. 2022).

Because there is a medically demonstrated causal relationship between asbestos exposure and mesothelioma, "every non-trivial exposure to asbestos contributes to and constitutes a cause of mesothelioma." *McAskill v. Am. Marine Holding Co.*, 9 So. 3d 264, 268 (La. App. 2009). However, "[t]he mere physical presence of asbestos-containing materials at a particular job site is insufficient to find liability." *Lucas*, 60 So. 3d at 701 (citations omitted). Instead, there must be evidence showing that the plaintiff was working with or around asbestos-containing materials,

such as insulation. *McAskill*, 9 So. 3d at 268 (citing *Grant v. Am. Sugar Refining, Inc.*, 952 So. 2d 746 (La. App. 2007)).

For example, in *Vodanovich*, the plaintiff was a longshoreman who worked at various wharves in the New Orleans area and the defendants were vessel repair companies that performed work on vessels at some of those wharves. 869 So. 2d at 933. The plaintiff and one of his coworkers testified about the plaintiff's work activities and asbestos exposure. *Id.* The plaintiff testified to unloading sacks of raw asbestos and that "he could have been exposed to asbestos during the maintenance and repair of the ships," but "he could not identify the contractors performing this work nor could he provide specific details of the [ship repairer] defendants' activities in relation to the work performed and asbestos exposure." *Id.* The plaintiff's coworker "could provide no evidence of specific instances where the [ship repairer] defendants' activities caused the plaintiff to be exposed to any asbestos fibers." *Id.* The court held that, without evidence of the plaintiff's involvement in the ship repairer defendants' work, the names of the companies performing the work, or the materials they were using, there was insufficient evidence that the plaintiff was exposed to asbestos fibers from the ship repairer defendants' work. *Id.* at 933-34.

Similarly, in *Palermo*, the adult children of two deceased wharf workers sued various ship repair companies, among others, alleging that their fathers' asbestos-related diseases were caused by the defendants' activities. 933 So. 2d at 171. The court stated that "[t]he threshold issue in the determination of whether the activities of the three ship repair company defendants resulted in 'substantial' asbestos exposure to the plaintiffs (that is, exposure of a degree sufficient to constitute a substantial contributing factor in bringing about the plaintiffs' respective diseases) is whether plaintiffs proved the existence of *any* exposure to [the decedents] resulting from defendants' activities." *Id.* at 185 (emphasis in original). After reviewing the evidence, the court concluded

there was none placing the decedents in the vicinity of the ship repairers' work with asbestos, particularly their insulation work. *Id.* at 185-86.

Further, in *Lucas*, the decedent's surviving spouse and children alleged that he contracted asbestosis as a result of his occupational exposure to asbestos-containing materials while he worked at Avondale as a pipefitter helper. 60 So. 3d at 692-93. In upholding the trial court's grant of summary judgment to several defendants, the appellate court noted that there was no evidence placing the decedent on a specific vessel, at a specific time, working with, or in the vicinity of, an asbestos-containing product. *Id.* at 701.

So, the question presented here is whether there is evidence that Thomas sustained a significant exposure to asbestos as a result of Avondale's activities, *i.e.*, that he worked with or around asbestos-containing materials at Avondale, such as insulation. There is not. First, there is no evidence that Thomas worked with asbestos-containing materials at Avondale. Johnson unequivocally testified at his deposition that Thomas was a "sheet metal man."[58] There is no evidence that working with sheet metal (as opposed to insulation) would have exposed Thomas to asbestos.

The thornier question is whether Johnson supplied evidence that Thomas worked around craftsmen – particularly, the Hopeman Brothers contractors – who themselves were working with asbestos-containing products. Plaintiffs maintain that Johnson's affidavit provides this evidence because he states that he worked with Thomas at Avondale's main yard, particularly Wet Dock 3, in all parts of the vessels, including the engine room, with other crafts (insulators and Hopeman Brothers contractors) who were installing asbestos-containing insulation and wallboard, which created dust that Johnson and Thomas encountered. Avondale, on the other hand, argues that

---

[58] R. Doc. 118-7 at 21-22, 25. In his affidavit, Johnson stated that Thomas was "a helper." R. Doc. 132-3 at 1. Regardless, neither description, by itself, implies that Thomas worked directly with asbestos-containing products.

Johnson's deposition testimony contradicts or fails to confirm his affidavit in these respects, thereby rendering the affidavit a sham and, thus, not competent summary-judgment evidence. And, says Avondale, without Johnson's affidavit, Plaintiffs have no evidence that Thomas had significant exposure to asbestos during his employment at Avondale.

The sham-affidavit doctrine provides that a party may not defeat a summary-judgment motion "using an affidavit that impeaches, without explanation, sworn testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). The doctrine applies when an affidavit is "so markedly inconsistent with the affiant's prior [or subsequent] deposition as to constitute an obvious sham." *Id.* (quoting *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 767 (5th Cir. 1988)). The sequence of the statements – that is, whether the affidavit preceded or followed the deposition – does not matter: so long as inconsistent statements were made by the same witness as deponent and affiant, a court may refuse to consider the affidavit as competent evidence. *Hacienda Records, L.P. v. Ramos,* 718 F. App'x 223, 235 (5th Cir. 2018) ("[N]o principle cabins sham affidavits to a particular sequence. Indeed, cross-examining the affiant in a later deposition seems the better way to find the flaws in a bogus affidavit." (alterations omitted) (quoting *In re CitX Corp.,* 448 F.3d 672, 679-80 (3d Cir. 2006))). The Fifth Circuit, however, has cautioned that "the bar for applying the doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Id.* (quoting *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019)). And even if an affidavit "is at odds with" the affiant's deposition testimony, most such discrepancies in testimony should be left to a jury's credibility determination. *Id.* (quoting *Winzer*, 916 F.3d at 472).

Here, Johnson's affidavit suffers from several fatal flaws. Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a [summary-judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Johnson's affidavit fails this test. The affidavit was drafted by an attorney after a brief meeting with Johnson, and, when asked if he supplied the information in the document, which he doubted he could read, Johnson replied "the lawyer told me some of the information."[59] In other words, Johnson's sworn deposition testimony refutes the representation that his affidavit is entirely from his personal knowledge, rendering it incompetent as summary-judgment evidence.

In addition, as reviewed above, Johnson's deposition testimony is inconsistent with many of the key points made in the affidavit.[60] For example, contrary to Plaintiffs' assertion, Johnson did not testify at his deposition that he worked *with* Thomas on Wet Dock 3 in the presence of other craftsmen who were creating asbestos dust. Rather, Johnson's deposition testimony declares the opposite – that he did not work *with* Thomas at Avondale. Indeed, Johnson could not recall working with Thomas or where Thomas worked in the shipyard, and instead candidly admitted, "I seen Sam at work, but I don't recall where at."[61] With respect to Wet Dock 3 – the location the affidavit states they supposedly worked together in the presence of asbestos dust – Johnson did not confirm the truth of the affidavit statement, testifying only that he could not recall, that he "might have passed by [Thomas]" near Wet Dock 3, and that he had "seen [Thomas] at Avondale Shipyard."[62] Moreover, Johnson refused to directly answer questions about whether he and Thomas specifically encountered dust created by insulators and other craftsmen, particularly

---

[59] R. Doc. 118-7 at 29-33.
[60] *See supra* text accompanying notes 16-30.
[61] R. Doc. 118-7 at 21-24, 37-38,42 (quote at 22).
[62] *Id.* at 37-38.

workers from Hopeman Brothers.[63] Rather than answering these questions, Johnson gave general responses, with no link to Thomas, including: "They had asbestos all over out there. Them people had it loading it on trucks, I think," and "Hopeman Brothers was loading on the crane and things, putting that on the boat."[64] Yet, Johnson had no specific recollection of seeing Thomas on a boat.[65] Taken as a whole, Johnson's deposition testimony completely contradicts his affidavit which is not even entirely made on personal knowledge. At best, Johnson's deposition testimony provides evidence that Thomas and asbestos were both present at Avondale – and, even then, not in the same parts of the shipyard at the same time. Regardless, the mere presence of asbestos at a jobsite is not enough to prove exposure. *Lucas*, 60 So. 3d at 701. As in *Vodanovich*, *Palermo*, and *Lucas*, without Johnson's affidavit, which is not competent summary-judgment evidence, Plaintiffs have no evidence that Thomas worked with or around asbestos at Avondale.[66]

Further, Plaintiffs offer no reasonable explanation – such as newly discovered evidence, honest mistake, or genuine confusion at the deposition – for Johnson's failure to confirm the core statements in his affidavit. *See Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (collecting cases). There is no claim that Johnson misspoke at his deposition or later recovered lost memories; indeed, the affidavit *predates* the deposition, and it was at the deposition that he could not confirm the contents of the affidavit. When there is no explanation for the contradiction, the conflict is resolved against the affiant. *See Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482-83 (5th Cir. 2002). Here, the discrepancies were not merely slight inconsistencies; Johnson disavowed the affidavit's material statements, could not recall the very facts the affidavit

---

[63] *Id.* at 38-40.
[64] *Id.* at 39-40.
[65] *Id.* at 26.
[66] These three cases are distinguishable from *Marcella* – upon which Plaintiffs rely – because, in the latter, two of the decedent's coworkers testified to his asbestos exposure aboard ships where he was around tradesmen who were cutting block insulation and working with other asbestos-containing products. *See Marcella v. Huntington Ingalls, Inc.*, 2026 WL 1469543, at *1 (E.D. La. May 26, 2026).

asserts, and confirmed that Plaintiffs' counsel supplied some of the information in the document. These are not the kind of discrepancies that could be left to a jury's credibility determination, but rather "inherent inconsistencies" amounting to a wholesale failure of Plaintiffs to provide competent evidence under Rule 56(c)(4). Thus, Avondale's summary-judgment motion must be granted.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Avondale's motion for summary judgment is GRANTED, and Plaintiffs' claims against it are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motions for summary judgment filed by defendants and third-party defendants Paramount Global, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation (R. Doc. 121) and Bayer CropScience, Inc, as successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company (R. Doc. 122) are DISMISSED AS MOOT.[67]

New Orleans, Louisiana, this 28th day of August, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

[67] Plaintiffs did not file an opposition to Paramount's motion and did not sue Bayer. And Avondale's third-party claims will be dismissed as a result of this Court's granting Avondale's summary-judgment motion.